**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-00894-001-TUC-JGZ (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Enrique Valencia-Lopez, | |
| Defendant. | |

Pending before the Court are: (1) Defendant's Motion to Present Duress Defense and Jury Instruction (Doc. 39); (2) the Government's Motion in Limine to Preclude Duress Defense and Jury Instruction (Doc. 33); and (3) the Government's Motion in Limine to preclude Dr. Barillas's Expert Testimony (Doc. 52). On March 21, 2018, an evidentiary hearing, which included testimony from Peter Chalk, Ph.D., and Hector F. Barillas, Ph.D., was held on the pending matters. (Doc. 72.) At the pretrial conference on April 16, 2018, the parties answered questions from the Court and presented additional argument regarding the pending matters. For the following reasons, the Court will: (1) grant in part Defendant's Motion to Present Duress Defense and Jury Instruction; (2) deny in part the Government's Motion in Limine to Preclude Duress Defense and Jury Instruction; and (3) grant in part and deny in part the Government's Motion in Limine to Preclude Dr. Barillas's expert testimony.

## Background

On May 13, 2017, Defendant drove a commercial truck from Mexico into the

United States through the Mariposa Port of Entry. During a secondary inspection, agents discovered 6,230.9 kilograms of marijuana located within boxes placed on top of pallets, underneath bell peppers. Defendant is charged with conspiracy to possess marijuana with intent to distribute and possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), and 846, and conspiracy to import marijuana, and importation of marijuana in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and (b)(1)(G).

**Duress Defense**

During the post-arrest interview, Defendant told agents about the events giving rise to his duress defense. Defendant has submitted a proffer of duress. (Doc. 39 at 4–8.) Defendant's proffer consists of "information provided to case agents during his post-arrest interview and statements provided to defense counsel in the course of representation." (*Id.* at 4.) If the court considers Defendant's duress defense as a matter of law, it "must accept [his] proffer as true in its entirety." *United States v. Chi Tong Kuok,* 671 F.3d 931, 947 (9th Cir. 2012).

**1. Defendant's Proffer of Duress**

Defendant owns a commercial truck and trailer. (Doc. 39 at 4.) For about the past 23 years or so, he has had a visa to enter the United States to deliver commercial goods and he has regularly entered the United States for his work. (*Id.*)

Several days before his arrest, Defendant entered into a contract to transport bell peppers which he picked up in Los Mochis, Sinaloa, the day before his arrest. (*Id.*) Thereafter, he made various stops in Mexico at highway toll locations and a checkpoint where the bell peppers were unloaded and subjected to drug-sniffing dogs. (*Id.*)

The evening before his arrest, when Defendant was near Magdalena, Sonora, he pulled off of the shoulder of the road to relieve himself and check his rig. (*Id.*) Two cars pulled up, a man removed Defendant from his truck and pointed a gun against Defendant's back. (*Id.* at 4–5.) Defendant observed several men with guns. (*Id.* (citing Doc. 39, Ex. A at 25, 26).) Defendant was shoved into one of the cars. (*Id.* at 4.) He was placed face down on the floor of the car, just in front of the rear seats. (*Id.* at 5.) Due to

his position, he could not see how many people were involved in the kidnapping. (*Id.* (citing Doc. 39, Ex. A at 24).)

The men told Defendant that they needed his truck and if he did not agree to do what they wanted him to do, they would kill him. (*Id.*) One of the men drove away in Defendant's truck while the others remained with him in the car. (*Id.*) While in the car, Defendant was so scared, he was shaking. (*Id.*) (citing Doc. 39, Ex. A at 53).)

Defendant does not know how long he was held in the car. (*Id.*) Defendant explained during the post-arrest interview: "'I don't think anybody . . . keeps track of the time when they're in a, in a situation like this . . . . It seems like an eternity. It seems like a second, I don't know . . . .'" (*Id.* quoting Doc. 39, Ex. A at 45).) While Defendant was being held, one of the men took his wallet and cell phone. (*Id.*).

When Defendant's truck was returned, one of the men told him: "'For me to do my whole route like normal and if I said something they were going to kill me.'" (*Id.* (quoting Doc. 39, Ex. A at 27).) Defendant was also told that if he did not follow the men's orders, they would "'end'" his family. (*Id.*) The men returned Defendant's wallet to him, but kept his cell phone. (*Id.* at 5–6.) Because Defendant's license, bearing his address, and other personal items were in his wallet, he believed that the men had more than enough information to find him and hurt him or his family. (*Id.* at 6.)

Although the men did not tell Defendant what they were doing with his truck, he assumed "'that they stuck drugs in it.'" (*Id.* at 6 (quoting Doc. 39, Ex. A at 28).) The men told him to "'Get outta here. We'll be watching you.'" (*Id.* (quoting Doc. 39, Ex. A at 28).)

Defendant believed the men who had kidnapped him were cartel members. (*Id.*) He was released and received his truck back in the early morning hours. (*Id.*) "He believed that one of the kidnapper's cars was following him," and he was scared. (*Id.* (citing Doc. 39, Ex. A at 28, 29).) He continued north toward his original destination. (*Id.*) While in Mexico, he stopped at a truck stop for a few hours where his paperwork was processed for his commercial truck load. (*Id.*) At some point, Defendant slept in his

truck for several hours. (*Id.*) Later, he received a "'green light'" at Mexican customs, so his truck was not searched. (*Id.* (quoting Doc. 39, Ex. A at 32).) Defendant did not tell anyone at Mexican customs about what had happened because he believed that somebody could have been watching his truck. (*Id.* at 6–7 (citing Doc. 39, Ex. A at 33).)

Upon entering the Mariposa Port of Entry, Defendant did not tell the primary inspection agents about his kidnapping and his suspicion that drugs had been placed in his truck. (*Id.* at 7.) During the post-arrest interview, Defendant stated that he did not inform the agents at primary inspection because of "'[f]ear-fear. I mean when you get scared, you know it's bad.'" (*Id.* (quoting Doc. 39, Ex. A at 40).) Defendant did not want to die. (*Id.* (quoting Doc. 39, Ex. A at 42.)

Defendant points out that the Mariposa Port of Entry is in the relative open. (*Id.*) Defendant is aware that scouts from cartels are constantly surveilling the Mariposa Port of Entry from the hills in Nogales, Sonora. (*Id.*) Therefore, Defendant did not believe that he had reached safety at either the primary or secondary inspection areas. (*Id.*)

Defendant believed that by driving the truck into the United States, he would be alive even if he was in jail. (*Id.*) Defendant believed that if he had refused, he would have been killed. (*Id.*)

Defendant did not know how the men who kidnapped him planned on making contact with him in the United States had he not been stopped at the port of entry. (*Id.*)

In addition to the above proffer, Defendant intends to introduce expert testimony on violence and drug trafficking organizations in Mexico. (*Id.* at 8.)

**2. Standard**

A defendant may not present a duress defense to the jury, or receive a jury instruction on duress, unless he has made a prima facie showing of duress in a pre-trial offer of proof. *United States v. Ibarra-Pino,* 657 F.3d 1000, 1004 (9th Cir. 2011). "[T]o make a prima facie showing for a duress defense or a jury instruction, a defendant must establish: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape

the threatened harm." *Id.* (internal quotation marks and citation omitted). "In the absence of a prima facie showing of duress, evidence of duress is irrelevant and may be excluded, and a jury instruction is not appropriate." *Id.* at 1004–05 (citations omitted). Thus, fear, alone, is not enough to merit the defense or instruction. *United States v. Moreno,* 102 F.3d 994, 997 (9th Cir. 1996) (citation omitted).

**3. Discussion**

The government opposes presentation of the duress defense and accompanying jury instruction on the first and third elements—immediacy of threat of bodily harm or serious injury and lack of a reasonable opportunity to escape the threatened harm. (Doc. 46 at 3–4.)

With regard to the first element, "immediacy requires that there be some evidence that the threat of injury was present, immediate, or impending. '[A] veiled threat of future unspecified harm' will not satisfy this requirement." *United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir.1984) (quoting *Rhode Island Recreation Center v. Aetna Casualty and Surety Co.*, 177 F.2d 603, 605 (1st Cir. 1949)). The threat "may be express or implied, so long as it is an immediate threat as distinguished from generalized fear." *United States v. Navarro*, 608 F.3d 529, 533 (9th Cir. 2010).

As to the third element, "[t]he opportunity to surrender to the authorities on reaching a point of safety presents an opportunity to escape the threatened harm." *Ibarra-Pino*, 657 F.3d at 1005. "A defendant takes 'the opportunity to escape the threatened harm' where the defendant 'cooperate[s] with authorities' at the first opportunity to do so without alerting an observer and 'submit[s] to authorities at the first reasonable opportunity' by consenting to a search." *Id*. at 1006 (quoting *Contento-Pachon*, 723 F.2d at 695). Thus, "'[o]nce a defendant . . . reache[s] a position where he can safely turn himself in to the authorities he . . . likewise ha[s] a reasonable opportunity to escape the threatened harm.'" Id. at 1005 (quoting *Contento-Pachon*, 723 F.2d at 695).

Defendant need only make a prima facia showing to be entitled to a duress defense and instruction. *Ibarra-Pino,* 657 F.3d at 1004. "Factfinding is usually a function of the

jury, and the trial court rarely rules on a defense as a matter of law." *Contento-Pachon*, 723 F.2d at 693. Upon consideration of Defendant's proffer, which the Court must accept as true, *Chi Tong Kuok,* 671 F.3d at 947, the Court concludes that Defendant has made a sufficient prima facia showing to be permitted to introduce evidence supporting a duress defense. Evidence of Defendant's defense is both relevant and probative as to his culpability for the offenses with which he is charged. The Court will reserve judgement as to whether the evidence admitted at trial will support Defendant's request for a duress instruction.

**Government's Motion in Limine to Preclude Dr. Barillas's Expert Testimony**

Dr. Barillas is a licensed psychologist who evaluated Defendant on October 11, 2017. (Doc. 49 at 1.) He diagnosed Defendant with post-traumatic stress disorder (PTSD). (*Id.*)

Defendant asserts that on November 18, 2015, he was a victim of an unsolved shooting. (*Id.* at 2.) Defendant had been riding as a passenger in a truck when several cars tried to stop the truck. (*Id.*) The truck driver eluded the cars. (*Id.*) As the truck drove away, an individual fired shots, one of which hit Defendant in his back. (*Id.*) Defense counsel has provided the government with a Caborca, Sonora, police report and a newspaper article about the shooting. (*Id.*)

According to Dr. Barillas, Defendant's PTSD was caused by the 2015 shooting and the 2017 kidnapping prior to his arrest. (*Id.* at 2, 6) Defendant contends that an individual with PTSD will respond differently to highly stressful situations than individuals without PTSD. (*Id.* at 2–3.) Dr. Barillas will testify that an individual with PTSD who experienced a new traumatic incident would have significant difficulty engaging in rational decision-making in the immediate aftermath of the incident. (*Id.* at 3.) Such individuals may also manifest different reactions and responses to stressful situations from those who do not have PTSD: one person could display symptoms of severe stress or anxiety, while another might appear calm. (*Id.*) Dr. Barillas will also testify that when people with PTSD experience a new traumatic event, they often

misperceive the accurate passage of time. (*Id.*)

During the post-arrest interview, agents commented that Defendant was not acting or exhibiting body language as if he had been though an experience like the kidnapping. (*Id.* at 4–5) The agents also expressed skepticism as to why Defendant did not inform Mexican or American customs officials about the illegal cargo. (*Id.* at 5.)

Dr. Barillas observed the post-arrest video. (*Id.* at 4.) Dr. Barillas opined that Defendant did not exhibit signs consistent with PTSD during the interview because he felt safe at that time. (*Id.*) Dr. Barillas did not observe behavior, body language, etc., "inconsistent with having been kidnapped or indicative of deceitfulness." (*Id.*)

According to Defendant, Dr. Barillas will explain PTSD, Defendant's symptoms, and how PTSD might have affected Defendant on the day of the offense—from the point his kidnappers released him until he reached the U.S. port of entry and during the post-arrest interview. (*Id.* at 6; doc. 53 at 3.) "This evidence will give the jury insight as to [Defendant's] state of mind at the time of the kidnapping and afterwards, in light of his PTSD." (Doc. 49 at 6; *see also* doc. 53 at 3.)

The government objects to Dr. Barillas's testimony on the grounds that it would vouch for Defendant's credibility and usurp the jury's fact-finding role with regard to the duress defense. (Doc. 52.) The Court agrees that parts of Dr. Barillas's proposed testimony are inadmissible and, therefore, will grant the motion in part.

Dr. Barillas cannot testify to Defendant's state of mind from the time of the kidnapping until he reached the U.S. port of entry on the day of the offense or during the post-arrest interview. An expert witness in a criminal case cannot state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Fed. R. Evid. 704(b); *United States v. Morales*, 108 F.3d 1031, 1035–38 (9th Cir. 1997) (en banc) (allowing expert testimony that "support[s] an inference or conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily

follow from the testimony.").

Dr. Barillas also may not give an opinion that he did not observe behavior or body language from Defendant during the post-arrest interview that was inconsistent with having been kidnapped or indicative of deceitfulness. "Expert testimony should not be permitted if it concerns a subject improper for expert testimony, for example, one that invades the province of the jury. Credibility is a matter to be decided by the jury." *United States v. Binder,* 769 F.2d, 595, 602 (9th Cir. 1985) (internal citation omitted), *overruled on other grounds by Morales,* 108 F.3d. at 602 n.1.

It is unclear to the Court what the exact purpose of Dr. Barillas's testimony may be. Defendant stresses that Dr. Barillas's testimony is not part of his duress defense. (Doc. 53 at 4.) However, Defendant introduced Dr. Barillas's testimony at the evidentiary hearing on Defendant's proffer for duress. Given the instant record, the Court surmises that Defendant intends to call on Dr. Barillas to explain, or help the jury evaluate, how the reactions and responses of a person with PTSD may differ from an individual who does not have PTSD. Dr. Barillas may testify about his diagnosis of Defendant with PTSD and about how a person with PTSD may generally respond to situations. Although Dr. Barillas may testify as to what Defendant told him about the 2015 shooting, he cannot relate what Defendant told him about the kidnapping unless Defendant has already testified about that incident.

For the foregoing reasons,

IT IS ORDERED THAT Defendant's Motion to Present Duress Defense and Jury Instruction (Doc. 39) is GRANTED IN PART. Defendant is permitted to present evidence supporting a duress defense at trial. The Court reserves ruling on whether Defendant is entitled to a jury instruction on duress.

IT IS FURTHER ORDERED THAT the Government's Motion in Limine to Preclude Duress Defense and Jury Instruction (Doc. 33) is DENIED IN PART to the extent that Defendant may present evidence supporting a duress defense at trial. The

///

Court reserves ruling on whether Defendant is entitled to a jury instruction on duress.

IT IS FURTHER ORDERED that the Government's Motion in Limine to Preclude Dr. Barillas's Expert Testimony (Doc. 52) is GRANTED IN PART and DENIED IN PART as set forth in the body of this Order.

Dated this 18th day of April, 2018.

Honorable Jennifer G. Zipps
United States District Judge